Thomas A. Saenz (Cal. Bar No. 159430)
Luis L. Lozada (Cal. Bar No. 344357)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
          llozada@maldef.org

*Attorneys for Plaintiff and
the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| LUIS SAUL BAUTISTA MARTINEZ, <br><br> Plaintiff, <br><br> v. <br><br> NUVISION CREDIT UNION, <br><br> Defendant. | Case No.: 8:24-cv-02422-AH-JDEx <br><br> Hon. Anne Hwang <br><br> **PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** <br><br> Hearing Date: July 30, 2025 <br> Hearing Time: 1:30 p.m. <br> Location: Courtroom 7D |

## <u>NOTICE OF MOTION AND UNOPPOSED MOTION</u>

PLEASE TAKE NOTICE that on July 30, 2025, at 1:30 p.m., or as soon after as the matter may be heard, in the above-mentioned court, located at 350 1st Street, Los Angeles, CA 90012, the Honorable Anne Hwang presiding, Plaintiff Luis Saul Bautista Martinez, individually and as class representative on behalf of the Class, moves for the following relief regarding the Settlement Agreement and Release with Defendant NuVision Credit Union ("NuVision"):

1.     That the Court certify, for settlement purposes only, the settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3);

2.     That the Court appoint Plaintiff as Class Representative;

3.     That the Court appoint Plaintiff's attorneys as Class Counsel;

4.     That the Court grant preliminary approval of the Settlement;

5.     That the Court approve mailing to the Class Members the proposed Class Notice;

6.     That the Court appoint Phoenix Class Action Administration Solutions as the Settlement Administrator; and

7.     That the Court schedule a hearing for final approval of the Settlement.

This Motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached memorandum.

This Motion is based on: this notice; the following memorandum in support

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

CASE NO.: 8:24-cv-02422-AH-JDEx

of the Motion; the Declaration of Luis L. Lozada and attached Settlement Agreement and Release; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the Motion. NuVision does not oppose this Motion.

2

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

III.   PROPOSED SETTLEMENT ................................................................... 3

   A. The Settlement Class ...................................................................... 3

   B. Settlement Overview ...................................................................... 4

      1. *Corrective Action* ...................................................................... 4

      2. *Monetary Relief* ........................................................................ 4

   C. Distribution to Class Members ...................................................... 5

   D. Cy Pres Distribution of any Unclaimed Settlement Funds .............. 5

   E. Notice to Class Members ................................................................ 5

   F. Attorneys' Fees and Expenses, Settlement Administrator's Costs, and
      Class Representative Service Award .............................................. 6

IV.    ARGUMENT ...................................................................................... 7

   A. Certification of the Class is Proper Under Rule 23 ........................ 7

      1. *Rule 23(a) is Satisfied* ............................................................... 8

      2. *Rule 23(b)(3) is Satisfied* ........................................................ 10

      3. *Plaintiff's Counsel Should Be Appointed as Class Counsel* ........ 11

   B. The Settlement is Fair, Adequate, and Reasonable ...................... 11

   C. The Proposed Incentive Award is Fair, Adequate and Reasonable ........... 14

   D. The Proposed Notice is Clear and Adequate ............................... 16

V.     FINAL APPROVAL HEARING ............................................................ 17

VI.    CONCLUSION .................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

Cases                                                                                          Page(s)

*Abdullah v. U.S. Sec'y Assocs.*,
　731 F.3d 952 (9th Cir. 2013) ........................................................................8

*Amchem Prod., Inc. v. Windsor*,
　521 U.S. 591 (1997).................................................................................9, 10

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
　568 U.S. 455 (2013)......................................................................................10

*Bellinghausen v. Tractor Supply Co.*,
　306 F.R.D. 245 (N.D. Cal. 2015)...................................................................15

*Castillo v. Bank of Am., NA*,
　980 F.3d 723 (9th Cir. 2020) ..........................................................................9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
　361 F.3d 566 (9th Cir. 2004) ........................................................................16

*Cook v. Niedert*,
　142 F.3d 1004 (7th Cir. 1998) ......................................................................15

*Ellis v. Costco Wholesale Corp.*,
　285 F.R.D. 492 (N.D. Cal. 2012)...................................................................11

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ...........................................................7, 11, 12

*In re Heritage Bond Litig.*,
　2005 WL 1594403 (C.D. Cal. June 10, 2005) ..............................................13

*Nelson v. Avon Prod., Inc.*,
　2015 WL 1778326 (N.D. Cal. Apr. 17, 2015) .................................................8

*Rodriguez v. W. Publ'g Corp.*,
　563 F.3d 948 (9th Cir. 2009) ...............................................................12, 15

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
　944 F.3d 1035 (9th Cir. 2019) ........................................................................2

*Staton v. Boeing Co.*,
　327 F.3d 938 (9th Cir. 2003) ..................................................................7, 15

*Stevens v. Harper*,
　213 F.R.D. 358 (E.D. Cal. 2002) ...................................................................8

*Tierno v. Rite Aid Corp.*, No. C,
　2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ..............................................11

*Uschold v. NSMG Shared Servs.*, LLC,
　333 F.R.D. 157 (N.D. Cal. 2019)....................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ....................................................................................7, 8

Statutes

1

2

42 U.S.C. § 1981..................................................................................................3, 8
Cal. Civil Code § 51 ..................................................................................................3
Cal. Civil Code § 52(a)..........................................................................................13

3

4

Rules

5

Fed. R. Civ. P. 23..............................................................................................1, 8, 10
Fed. R. Civ. P. 23(a) ..........................................................................................1, 18
Fed. R. Civ. P. 23(a)(1) ..........................................................................................8
Fed. R. Civ. P. 23(a)(2) ..........................................................................................8
Fed. R. Civ. P. 23(a)(3) ..........................................................................................9
Fed. R. Civ. P. 23(a)(4) ..........................................................................................9
Fed. R. Civ. P. 23(a), (b)..........................................................................................7
Fed. R. Civ. P. 23(b) ..............................................................................1, 10, 11
Fed. R. Civ. P. 23(b)(3) ......................................................................................1, 18
Fed. R. Civ. P. 23(c) ..........................................................................................16
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................16
Fed. R. Civ. P. 23(e)(2) ..........................................................................................7
Fed. R. Civ. P. 23(g)(1)(A)..................................................................................11

Other Authorities

4 Newberg on Class Actions § 11:22 (4th ed. 2002)

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION

## I.    INTRODUCTION

The class-action Settlement Agreement and Release ("Settlement" or "Settlement Agreement") now before the Court is the product of more than  several months of direct discussions and negotiations between the Parties regarding the legal issues raised in this case, the merits of Plaintiff's claims, the accurate identification of proposed settlement class members, and the alleged potential damages.[1]

The Settlement, which was the result of arms-length and good faith negotiations conducted through direct communications between counsel, provides a Settlement Fund of $108,800 for the 34 members of the proposed Settlement Class ($3,200 per Class Member).  The Settlement represents a recovery of eighty percent of the statutory damages for Plaintiff's claims, and the Individual Settlement Payments will be distributed to the Class Members without need for them to complete a claim form or take any additional steps such as submitting documentation.  In addition to monetary relief, the Settlement provides corrective action.  NuVision has agreed to update its underwriting policies as appropriate to provide that applicants shall not be denied Consumer Credit Products solely on the basis of their immigration or citizenship status, eliminating the harm alleged in the Complaint for future applicants.

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Luis L. Lozada in Support of Plaintiff's Unopposed Motion for Preliminary Settlement Approval ("Lozada Decl."). Capitalized terms not defined here shall have the meanings as defined in the Settlement Agreement.

For the reasons set forth below, the Settlement represents an excellent result for the Settlement Class in this litigation and satisfies the requirements of Rule 23 and Ninth Circuit precedent.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019).  The Parties have engaged in good-faith, arms-length settlement negotiations, including confirmatory discovery.  Therefore, Plaintiff respectfully requests the Court grant preliminary approval of the Settlement. Granting preliminary approval will allow notice of the Settlement to be distributed to the Class Members to let them object, or opt out, and for a final approval hearing to be scheduled.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Luis Saul Bautista Martinez is a resident of Los Angeles, California. Since 2012, Plaintiff has been a recipient of Deferred Action for Childhood Arrivals ("DACA").  As a DACA recipient, Plaintiff is authorized to work in the United States and has a "work only" social security number.  On April 29 2023, Plaintiff applied for membership and auto loan from Defendant NuVision Credit Union ("NuVision").  NuVision informed Plaintiff that his application was approved and instructed him to provide his most recent paystub and a copy of his social security card.  On May 4, 2023, NuVision asked Plaintiff whether he has temporary residency, and he answered that DACA is not considered temporary residence as long as he continues to renew.  On May 15, 2023, NuVision denied Plaintiff's application and sent an adverse action notice indicating that "temporary residence"

2

and "verifications performed do not support information on the application" were the reasons for the credit denial.

On November 6, 2024, Plaintiff filed a class-action complaint in this Court against NuVision, alleging claims for alienage discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* (the "Unruh Act"). *See* Complaint, Dkt. 1. Plaintiff alleges that NuVision has a policy of denying applicants for Consumer Credit Products based on their immigration and/or citizenship status (the "Challenged Practice"). *Id.*

Since the time Plaintiff filed his Complaint, the Parties have engaged in ongoing good faith negotiations to resolve the claims alleged, ultimately resulting in an agreement in principle to settle this action. On May 5, 2025, the Parties filed a Joint Notice of Settlement. Dkt. 23.

## III.  PROPOSED SETTLEMENT

### A.  The Settlement Class

For settlement purposes only and consistent with the Parties' Settlement, Plaintiff seeks certification of the following Settlement Class, defined as: the 34 individuals who, according to NuVision's records, were residing in California and applied for a Consumer Credit Product with NuVision from November 6, 2022 through May 19, 2025, and were denied their application solely because of their immigration or citizenship status at the time they applied. Settlement § 1(c).

**B.    Settlement Overview**

The Settlement provides two important forms of relief for Class Members: (1) corrective action under which NuVision will not deny Consumer Credit Products based solely on an applicant's immigration or citizenship status, unless required by law, *id*., at § 2; and (2) Defendant will pay $108,800 to be used for individual payments by check made payable to each Class Member (the "Settlement Fund") to compensate Class Members for the alleged harm suffered, *id.* at §§ 1(n), 1(u) and 11.

### 1.    Corrective Action

The Settlement provides for comprehensive corrective action to Nuvision's underwriting criteria to eliminate any present or future risk of the Challenged Practice.  Specifically, First Tech agrees that it has ceased the Challenged Practice, and agrees that it will not deny Consumer Credit Products based solely on an applicant's immigration or citizenship status, unless required by law.  *Id*. at § 2.

### 2.    Monetary Relief

NuVision agrees to create a $108,800 Settlement Fund that will be used to make individual payments in the amount of $3,200 by check to each Class Member. *Id*. at § 1(n).  The Settlement Fund will be paid to Class Members; NuVision will separately pay the costs of administration; court approved attorneys' fees and costs; and incentive award.  *Id.* at § 1(u).

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**                                         CASE NO.: 8:24-cv-02422-AH-JDEx

## C.    Distribution to Class Members

The Settlement does not require Class Members to submit a claim or take any action to claim the monies they are entitled to under the Settlement.  *See id*. at § 11. Rather, payments will be made to Class Members by check payable to the Class Member and mailed to the Class Member's last known mailing address.  *Id*. Addresses will be updated by the Claims Administrator through skip-trace or other means.  *Id.* at § 5(b).

## D.    Cy Pres Distribution of any Unclaimed Settlement Funds

If any checks mailed to Class Members remain uncashed for 120 days after the checks are sent ("Unclaimed Settlement Funds"), those funds do not revert to NuVision.  *Id*. at §§ 1(v) and 12.  Instead, any Unclaimed Settlement Funds will be paid to *cy pres* recipients proposed by Class Counsel and approved by the Court.  *Id*. Class Counsel proposes Immigrants Rising and TheDream.US as *cy pres* recipients.

## E.    Notice to Class Members

The Settlement includes proposed English- and Spanish-language short-form and long-form notices to the class members that inform them of the terms of the Settlement and their rights to object to, or opt out of, the Settlement, or to do nothing and receive the benefits of the Settlement and be bound by it.  *Id*., Exs. 1-2.  All Class Members will receive notice by mail, sent to the best available mailing address for each Class Member, updated as appropriate by running the Class Member's name through the National Change of Address Registry.  Settlement § 5(b).  For all notices

that are returned as undeliverable, the Settlement Administrator will use standard skip tracing devices to obtain forwarding address information and re-mail the notice. *Id*. A website will also be established to provide Class Members with additional information about the Settlement. *Id*. at § 6(g).

**F.    Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class Representative Service Award**

Attorneys' fees, cost of litigation, and the cost of Notice and Administration shall be paid by NuVision in addition to the payments to Class Members. These expenses will be paid separate and apart from the Settlement Fund. *Id*. at § 1(u). Class Counsel will file a motion seeking approval for its attorneys' fees and costs. *Id*. at § 9. NuVision will not oppose an application for attorneys' fees and costs up to $40,000. *Id*. at § 11(d)(i). Further, Class Counsel estimates fees will not exceed $40,000. This estimate of attorneys' fees encompasses any work conducted by Class Counsel prior to settlement, and any future work conducted following the Court's order granting preliminary approval, including but not limited to: answering questions from Class Members; reviewing documentation; drafting and submitting a motion for attorneys' fees and cost and a motion for final approval.

Class Counsel will also file a motion requesting that the Court approve a payment of the Settlement Administrator's costs up to $3,300. *Id*. at § 11(d)(iii). The Settlement Administrator shall be Phoenix Class Action Administration Solutions. A copy of the Administrator's brochure detailing its experience and

services is attached to the Lozada Declaration as Ex. B.

Class Counsel shall also apply for a Service Award for the Named Plaintiff of up to $5,000 in recognition of his efforts in this case that have resulted in a benefit to all of the Class Members.  *Id*. at § 11(d)(ii).

## IV.   ARGUMENT

"Where, as here, parties reach an agreement before class certification, 'courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'"  *Uschold v. NSMG Shared Servs.*, LLC, 333 F.R.D. 157, 166 (N.D. Cal. 2019) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).  Courts must make two determinations at the preliminary approval stage: first, the court must determine that the settlement classes meet the requirements for class certification, Fed. R. Civ. P. 23(a), (b); second, the court must determine on a preliminary basis that the settlement is fair, reasonable, and adequate such that notice should be sent to the proposed class, Fed. R. Civ. P. 23(e)(2).  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011).

## A.     Certification of the Class is Proper Under Rule 23

"The validity of use of a temporary settlement class is not usually questioned." Conte & Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002).  For settlement purposes here, the Parties agree to certify the proposed Classes.  The relevant factors under Rule 23 weigh in favor of certification.

### 1.    *Rule 23(a) is Satisfied*

<u>First</u>, numerosity is satisfied because joinder of the Class Members would be impractical.  Fed. R. Civ. P. 23(a)(1).  NuVision's records identify 34 individual applicants who applied for consumer credit products and were denied based on their immigration or citizenship status during the class period.  *See Nelson v. Avon Prod., Inc.*, No. 13-CV-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015) ("Courts have repeatedly held that classes comprised of 'more than forty' members presumptively satisfy the numerosity requirement.").

<u>Second</u>, commonality is satisfied because "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In determining whether commonality is met, the Supreme Court has instructed that the focus is on whether there are common issues of fact among class members and whether class treatment will "generate common answers apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec'y Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, common issues include whether NuVision's Challenged Practice at the time Plaintiff applied for a Consumer Credit Product denied Plaintiff and Class Members the opportunity to receive Consumer Credit Products solely on the basis of their immigration or citizenship status, and whether NuVision violated Section 1981 or the Unruh Act.  *See Stevens v. Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002) ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative

class members.").

Third, typicality is satisfied because the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (internal quotation marks omitted). Here, Plaintiff's claims are typical of the Class he seeks to represent because he alleges that: (1) he was legally residing in the United States as a DACA recipient, (2) he applied for a Consumer Credit Product from NuVision in 2023, (3) using an EAD, and (4) his application was denied based on his immigration or citizenship status.

Fourth, Plaintiff is an adequate class representative because he has and will adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where a class representative "possess[es] the same interests and suffer[s] the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation marks omitted). Here, Plaintiff has the same interests as other Class Members and has shown that he can fairly and adequately protect Class Member's interests. Like all Class Members, Plaintiff was denied his Consumer Credit Product application by NuVision because of his immigration or citizenship status. Plaintiff has no conflicts of interest with the Class Members, and Class Members stand to benefit substantially from Plaintiff's pursuit

9

of damages on their behalf.

Additionally, Plaintiff is represented by adequate counsel. The Mexican American Legal Defense and Educational Fund ("MALDEF") has extensive experience litigating complex civil rights class actions and Class Counsel has vigorously prosecuted this action on behalf of Plaintiff and has engaged in extensive settlement negotiations with NuVision. For these reasons, Plaintiff satisfies the adequacy requirement of Rule 23(a).

### 2.    Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that common questions predominate over individual ones and that a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

Here, the Class is sufficiently cohesive to satisfy predominance. *Amchem*, 521 U.S. at 623. Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks omitted). Rather, the "predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Amchem*, 521 U.S. at 626 (internal quotation marks omitted). Plaintiff challenges NuVision's Consumer Credit Product underwriting criteria and policies that apply to all Class Members. Common questions as to their nature and legality can be adjudicated collectively and will drive the resolution of

10

class claims. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 509 (N.D. Cal. 2012) (predominance is satisfied as to discrimination claims where plaintiffs challenged "specific employment practices" that applied "companywide").

Whether Rule 23's superiority factor is met rests on factors like individual class members' desire to bring individual actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3). Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006). Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3. *Plaintiff's Counsel Should Be Appointed as Class Counsel*

Adequacy of class counsel depends on (1) work performed on the matter; (2) experience; (3) knowledge of the law; and (4) resources that counsel can commit. Fed. R. Civ. P. 23(g)(1)(A). Class Counsel readily satisfy these criteria, as set forth above, and as demonstrated by activity in this case to date.

## B. The Settlement is Fair, Adequate, and Reasonable

After the court determines that class certification is proper, it must then assess whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*,

150 F.3d at 1026.  In deciding whether to grant preliminary approval, courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Courts may consider and balance a number of other factors, such as: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; the extent of discovery completed . . . [and] [5] the experience and views of counsel[.]"  *Hanlon*, 150 F.3d at 1026.

Here, the weight of factors demonstrates that the Settlement is fair, adequate, and reasonable based on four principal reasons:

*First*, Plaintiff faces substantial obstacles to full recovery, and defendant liability is not guaranteed.  Plaintiff's claims for discrimination on behalf of DACA recipients and non-permanent immigrants present a relatively novel theory with numerous unsettled issues—*e.g.*, whether immigration-status discrimination is cognizable under § 1981; whether the evidence would support an argument that NuVision's Challenged Practice was a pre-text for alienage discrimination, etc. Further, the Class may face challenges demonstrating actual damages that can be calculated and proved on a class-wide basis.  This Settlement mitigates these risks posed to the Class Members.

*Second*, the monetary and corrective action relief provide substantial value for Class Members.  Class Members will receive individual payments of $3,200, which

amounts to 80% of the $4,000 statutory damages available under the Unruh Act for each discriminatory act.  Cal. Civil Code § 52(a).  This is an excellent result for Class Members.  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (recovery of 36% of total net loss is an "exceptional result").  The Settlement also provides prospective corrective action intended to eliminate the allegedly discriminatory practices.  This corrective action relief represents the *maximum* degree of prospective relief available.

*Third*, the Settlement was reached as the result of lengthy, arms-length negotiations.  *See* Lozada Decl. ¶¶ 16 and 19.  Specifically, the Parties, through counsel: exchanged informal discovery, including credit application and records, copies of policies and procedures, and records regarding NuVision's membership base, to assess the merits of Plaintiff's discrimination claims, and the number of potentially affected Class Members.  Following this exchange of discovery, and an evaluation of the terms of court-approved class action settlements in similar cases filed by Class Counsel against several banks, the Parties negotiated the terms of the Settlement, including the payments to individual Class Members and NuVision's obligation to pay for attorneys' fees, the amount of an incentive award and the cost of administration in addition to the payments to Class Members.  *Id*. at ¶¶ 22–23.

Overall, the Parties exchanged multiple offers and counter-offers over this period until a settlement in principle was reached.  *Id*. at ¶ 15.  Class Counsel initially demanded full payment of the potential damages for each Class Member.  However,

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

CASE NO.: 8:24-cv-02422-AH-JDEx

because of potential defenses to Class Member Claims, including through the development of discovery demonstrating non-discriminatory factors considered in NuVision's underwriting process, the Parties eventually agreed to payments to each Class Member of 80% of statutory damages, along with a commitment by NuVision to modify its underwriting criteria.  The Parties also negotiated the source of funds to pay for Class Counsel's fees and costs, a Service Award, and the costs to implement the Settlement.  The Court should take note that the parties *did not* negotiate the amount of Class Counsel's fees and costs as part of the settlement; they only negotiated the source of funds for the payment of fees and costs and the other costs associated with the Settlement.  Following months of negotiations, the Parties agreed that Class Counsel should have "clear sailing" up to $40,000.  Again, NuVision has no knowledge of the actual amount of Class Counsel's fees and costs.

*Fourth*, the terms of the Settlement are comparable to the settlements approved by the Northern District and Central District of California in class-action cases filed against Kinecta, First Tech, Alliant, and Wells Fargo.  Ultimately, this Settlement represents an excellent result for Class Members.  It is the product of arms-length negotiations conducted over a period of months.  There was no collusion or self-dealing.  Accordingly, the Settlement is fair, adequate, and reasonable.

## C.    The Proposed Incentive Award is Fair, Adequate and Reasonable

Class Counsel will apply for an "Incentive Award" of $5,000 for the services performed by Plaintiff.  An incentive award is permitted in the Ninth Circuit based

on the services performed and time spent by the Named Plaintiff.  *See Staton*, 327 F.3d at 977.  Here, an incentive award of $5,000 is reasonable to compensate Plaintiff for his time and effort assisting Class Counsel to prosecute the claims of the Class Members and negotiate a settlement on behalf of the Class.  The proposed incentive award is within the range approved by courts in the Ninth Circuit, where "a $5,000 payment is presumptively reasonable."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

Further, Plaintiff faced heightened risk in bringing this action based on his lack of permanent immigration status, which makes him an attractive target for harassment and vulnerable to potential immigration consequences.  Incentive payments are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 948–59; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it necessary to induce an individual to participate in the suit.").  Plaintiff had several telephone conversations and email communications with Class Counsel, provided documents, and provided background information.  By bringing this action, Plaintiff placed himself at risk by publicizing his immigration status and revealing personal information.  Therefore, without Plaintiff's participation, Class Counsel would not have been able to bring

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT APPROVAL                                    CASE NO.: 8:24-cv-02422-AH-JDEx

this action and achieve an exceptional result for the Class.

**D.    The Proposed Notice is Clear and Adequate**

Rule 23(c)(2) requires that class notice be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

Here, the proposed long-form and short-form notices are easily understandable and include: (1) pertinent details about the case, including the nature of Plaintiff's claims; (2) the definition and scope of the proposed Class; (3) contact information for Class Counsel to answer questions; (4) the address for a website and telephone line maintained by the Settlement Administrator for Class Members to obtain important case documents and information; (5) instructions to file an objection or opt out of the Class; and (6) the date, time, and location of the fairness hearing. Settlement, Exs. 1-2. Furthermore, the notice will be sent directly by mail to the individual Class Members identified in NuVision's records. Settlement § 5. To ensure notice is mailed to the best available address, the Settlement Administrator will run the names and addresses of the Class Members through the National Change of Address Registry. *Id*. at § 5(b). In the event notice is returned undeliverable, the Settlement Administrator will use standard skip-tracing devices to obtain forwarding

16

address information.  *Id*.  Finally, given that some Class Members may only understand Spanish, the notice will be sent in both Spanish and English.  *Id*.  And, it will provide that questions be directed to MALDEF attorneys who are experienced dealing with bilingual and non-English speaking clients.

## V.    FINAL APPROVAL HEARING

Based on the deadlines set forth in the Settlement and Plaintiff's proposed order granting preliminary approval, in consultation with NuVision, Plaintiff proposes the following schedule for finalizing and implementing the Settlement:

| **Preliminary Approval Hearing** | July 30, 2025 |
|---|---|
| Preliminary Approval Order | July 30, 2025 |
| Deadline for the Settlement Administrator to mail notice and for Settlement Website to go live | August 29, 2025 [30 days after Preliminary Approval Order] |
| Bar Date to Opt Out or Object | September 28, 2025 [60 days after Preliminary Approval Order] |
| Deadline to file Motion for Final Approval and Motion for Fees, Costs, and Service Award | October 13, 2025 [75 days after Preliminary Approval Order] |
| **Final Approval Hearing** | November 5, 2025 |
| Final Approval Order | November 5, 2025 |
| Deadline for Defendant to transfer the Settlement Fund, amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and fees and costs payable to the Settlement Administrator | November 15, 2025 [10 days after Final Approval Order] |
| Effective Date (assuming no appeals) | December 5, 2025 [30 days after Final Approval Order] |
| Settlement Administrator to pay amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and Individual Settlement Payments | December 15, 2025 [40 days after Final Approval Order] |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1)

17

certify, for settlement purposes only, the Settlement Class under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (2) grant preliminary approval of the Settlement; (3) appoint Plaintiff Luis Saul Bautista Martinez as Class Representative, his counsel MALDEF as Class Counsel, and Phoenix Class Action Administration Solutions as Settlement Administrator; (4) approve mailing to the Class Members the Proposed Notice, and the establishment of a settlement website; and (5) schedule a hearing for final approval of the Settlement after entry of the Preliminary Approval Order.

Dated: July 8 2025                    Respectfully submitted,

                                      /s/ Luis L. Lozada
                                      Luis L. Lozada (Cal. Bar No. 344357)
                                      Thomas A. Saenz (Cal. Bar No. 159430)
                                      MEXICAN AMERICAN LEGAL DEFENSE
                                      AND EDUCATIONAL FUND
                                      634 South Spring Street, 11th Floor
                                      Los Angeles, CA 90014
                                      Telephone: (213) 629-2512
                                      Facsimile: (213) 629-0266
                                      Email: tsaenz@maldef.org
                                             llozada@maldef.org

                                      *Attorneys for Plaintiff and*
                                      *the Proposed Class*

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**                    CASE NO.: 8:24-cv-02422-AH-JDEx