UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

Case No.   8:24-cv-02422-AH-(JDEx)                           Date   December 11, 2025

Title   *Luis Saul Bautista Martinez v. NuVision Credit Union*

Present: The Honorable   Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):   Attorney(s) Present for Defendant(s):

None Present   None Present

**Proceedings:** (IN CHAMBERS) ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (DKT. NO. 29) AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD (DKT. NO. 28)

Before the Court are Plaintiff Luis Saul Bautista Martinez's ("Plaintiff") Motion for Final Approval of Class Settlement ("Motion"), Dkt. No. 29, and Motion for Approval of Attorneys' Fees, Costs, and Service Award ("Fees Motion"), Dkt. No. 28. The motions are unopposed. The Court held a final approval hearing on December 10, 2025. For the following reasons, the Court GRANTS the motions.

I.   **BACKGROUND**

   A.   **Factual and Procedural Background**

Plaintiff is a resident of Los Angeles and a recipient of Deferred Action for Childhood Arrivals ("DACA"). Mot. for Prelim. Approval at 2, Dkt. No. 25. Plaintiff applied for membership and an auto loan from Defendant NuVision Credit Union ("Defendant") in April 2023. *Id.* Defendant initially informed Plaintiff that his application was approved and asked whether Plaintiff had temporary residency,

and Plaintiff answered that DACA is not considered temporary residence. *Id.* Defendant then denied Plaintiff's application, citing "temporary residence" and "verifications performed do not support information on the application" as the reasons for credit denial. *Id.* at 2–3.

On November 6, 2024, Plaintiff filed this class action against Defendant for violations of 42 U.S.C. § 1981 and California's Unruh Civil Rights Act. Compl. ¶ 2, Dkt. No. 1. The Complaint alleges that Plaintiff and the proposed Class Members were denied access to Defendant's credit and loan services because of their citizenship or immigration status. *See generally id.*

On May 6, 2025, the parties filed a joint notice of settlement. Dkt. No. 23. On July 8, 2025, Plaintiff filed an unopposed Motion for Preliminary Approval of the Settlement Agreement and Release ("Settlement Agreement"). Dkt. No. 25. On August 6, 2025, the Court conditionally certified the Class for settlement purposes, preliminarily approved the Settlement Agreement, designated Plaintiff as the class representative, appointed the Mexican American Legal Defense and Educational Fund ("Class Counsel") as class counsel, appointed Phoenix Class Action Administration Solutions ("Administrator") as the settlement administrator, and approved class notice. Order Granting Prelim. Approval, Dkt. No. 27. On August 8, 2025, the Administrator served notice of the proposed settlement as required by the Class Action Fairness Act and has not received any objections to the settlement as of December 1, 2025. Islas Decl. ¶ 3, Dkt. No. 29-2; Joint Status Report, Dkt. No. 31.

On October 22, 2025, Plaintiff filed the instant Motion for final approval of the class action settlement, final certification of the class, and entry of judgment, Dkt. No. 29, and the Fees Motion for an award of $40,000 in attorneys' fees, $3,300 in settlement administration costs, and $5,000 as a service award for Plaintiff, Dkt. No. 28.

### B. Settlement Agreement

The Settlement Agreement sets forth the class definition and terms of the settlement.[1] *See* Settlement Agreement, Dkt. No. 25-2.

---

[1] Following the Court's Order Granting Preliminary Approval, the parties filed a joint addendum to the Settlement Agreement that revised the number of class members and the settlement fund amount. Addendum, Dkt. No. 29-1. The

Class Members are defined as "the 35 individuals who, according to Defendant's records, applied for a Consumer Credit Product with Defendant from November 6, 2022 through May 2025; were legally residing in the State of California at the time they applied; and were denied such credit products because of their immigration or citizenship status at the time that they applied." Addendum at 1.

Under the Settlement Agreement, Defendant agreed not to deny applicants consumer credit products solely based on their citizenship or immigration status and will allow immigrants to be evaluated for loans and other credit products on the same terms as U.S. citizens, subject to applicable federal and state laws and regulations. Mot. at 1; Settlement Agreement § 2. Additionally, Defendant agreed to pay a settlement fund of $112,000, with each Class Member entitled to receive $3,200. Addendum at 1; Mot. at 2 n.2. Defendant also agreed to pay up to $3,300 for settlement administration costs and promised not to oppose Class Counsel's request for attorney's fees and costs up to $40,000 and for a service award of up to $5,000. Mot. at 2; Settlement Agreement § 11(d)(i)–(ii). The sum of the settlement fund, attorney's fees, administration costs, and service award amount to a gross settlement amount of $160,300.

## II. CLASS CERTIFICATION

In the Order Granting Preliminary Approval, the Court provisionally certified the class for settlement purposes only. The Court now reviews class certification for final approval. Plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Under Rule 23, a class action may be maintained if Rule 23(a) is satisfied and one of the Rule 23(b) circumstances applies. Fed. R. Civ. P. 23(b).

### A. Rule 23(a)

The Rule 23(a) prerequisites are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

---

Addendum provides that the Class consists of thirty-five members and that each Class Member is entitled to receive $3,200 from a settlement fund of $112,000. *Id.*; Mot. at 2 n.2.

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1. **Numerosity**

The numerosity requirement is satisfied if the class is so large that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). "While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *See Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 988 (N.D. Cal. 2018).

The Class here consists of thirty-five Class Members, which is close to the general benchmark of forty members. *See Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984) ("Classes consisting of 25 members have been held large enough to justify certification."). Recognizing that the joinder of all thirty-five plaintiffs would be difficult and inconvenient, the Court finds that the numerosity requirement is satisfied.

### 2. **Commonality**

The commonality requirement is satisfied if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members' claims depend upon a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Courts generally find commonality where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation modified).

The Class Members' claims arise from the same challenged practice: Defendant's alleged policy of denying applicants for consumer credit products based on their immigration or citizenship status. Plaintiff identifies the common issues here as whether it is Defendant's policy or practice to reject applicants for

credit or loan products based on alienage or immigration status and whether such a policy or practice violates 42 U.S.C. § 1981 or the Unruh Act. Compl. at 6; Mot. for Prelim. Approval at 8. Given that resolution of these issues would resolve each Class Member's claim, the Class satisfies the commonality requirement.

### 3. <u>Typicality</u>

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation modified). "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (citation modified).

Plaintiff asserts his claims are typical of the Class because he alleges: "(1) he was legally residing in the United States as a DACA recipient, (2) he applied for a Consumer Credit Product from NuVision in 2023, (3) using an [Employment Authorization Document], and (4) his application was denied based on his immigration or citizenship status." Mot. for Prelim. Approval at 9. These qualities are shared with the Class Members, who were legally residing in California at the time they applied for consumer credit products and were allegedly denied because of their immigration or citizenship status. *See* Addendum at 1. Because Plaintiff's claims arise from the same factual basis and are based on the same legal theories as those applicable to all other class members, Plaintiff's claims are typical.

### 4. <u>Adequacy</u>

"Adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000) (citation modified).

Plaintiff represents that, like all Class Members, his consumer credit product application was denied by Defendant because of his immigration or citizenship status, and that Plaintiff has no conflicts of interest with the Class Members. Mot. for Prelim. Approval at 9. Plaintiff also asserts that Class Counsel has "extensive

experience litigating complex civil rights actions" and has vigorously prosecuted this action on behalf of Plaintiff. *Id.* at 10. Given that Plaintiff's interest aligns with those of the Class, and Class Counsel is qualified to litigate this class action, adequacy of representation is satisfied.

### B. Rule 23(b)(3)

A plaintiff seeking to certify a class under Rule 23(b)(3) must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. <u>Predominance</u>

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement "presupposes satisfaction of the commonality requirement of FRCP 23(a)(2)" and "goes further and asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024).

Plaintiff and Class Members' claims are based on the same alleged practices or policies imposed by Defendants. As Defendant did not oppose the preliminary approval motion or the final approval motion, the parties present no individual issues, such as other grounds for denials of consumer credit product applications or damages calculations. *See* Mot. for Prelim. Approval at 2; Mot. for Final Approval at 1. Even if such individual issues may exist, the common issue of whether Defendant's alleged policy of considering immigration or citizenship status violated applicable laws is "more prevalent or important." *See Lytle*, 114 F.4th at 1023; *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 538 (N.D. Cal. 2012) (finding that the common question of "whether Defendant has engaged in a pattern or practice of discrimination such that all class members are entitled to a presumption of discrimination" predominated over individual issues as to particular employment decisions). The common questions in this case therefore predominate over any individual issues.

### 2. Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). Here, the Court can more efficiently resolve whether Defendant's alleged practices and policies violate the applicable laws through a class action than on a case-by-case basis through individual lawsuits. Additionally, for the Class Members' claims of wrongfully denied applications for consumer credit products, "the amounts at stake for individuals may be so small that separate suits would be impracticable." *See Amchem*, 521 U.S. at 616. A class action is therefore the superior method of adjudication.

### C. Conclusion on Class Certification

Because each of the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3) are met, the Court GRANTS certification of the Class for settlement purposes.

## III. CLASS ACTION SETTLEMENT

Rule 23(e) authorizes district courts to approve class action settlements when they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine the fairness, adequacy, and reasonableness of the agreement, Rule 23(e) requires courts to consider four factors: whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. *Id.*

In the Ninth Circuit, district courts consider eight additional factors from *Churchill Vill. L.L.C. v. Gen Elec.*, 361 F.3d 566 (9th Cir. 2004) ("*Churchill* factors"), many of which overlap with Rule 23(e)'s factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

In addition to these factors, the Court must also confirm that the "settlement is not the product of collusion among the negotiating parties." *Id.* at 946–47. The Ninth Circuit has identified three signs of potential collusion: (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947 (citation modified).

Where, as here, the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation modified). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (citation modified).

### A.     Rule 23(e) Factors

First, the Court considers the fairness, reasonableness, and adequacy of the Settlement Agreement under Rule 23(e).

#### 1.     **Adequate Representation**

The first factor under Rule 23(e) is whether Plaintiff and Class Counsel have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4)." *See Hudson v. Libre Tech., Inc.*, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (citation omitted); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)). Because the Class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met.

  **2.**  <u>Arm's Length Negotiation</u>

  The second factor under Rule 23(e) is whether the settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  Class Counsel represents that the parties engaged in negotiations over a period of several months and evaluated the terms of court-approved settlements in similar class actions.  Lozada Decl. ¶ 16, Dkt. No. 28-1.  The parties exchanged multiple offers and counteroffers until reaching a settlement.  *Id*.  The parties filed a Joint Notice of Settlement on May 6, 2025, and continued settlement discussions to finalize the Settlement Agreement.  *Id.* ¶ 17.  Considering these facts, the Court finds the settlement was negotiated at arm's length.

  **3.**  <u>Adequacy of Relief</u>

  Rule 23(e)(2)(C) provides four additional factors for evaluating the adequacy of relief: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

  In assessing "the costs, risks, and delay of trial and appeal," courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial."  *See Baron v. HyreCar Inc.*, 2024 WL 3504234, at *7 (C.D. Cal. July 19, 2024) (citation omitted).  The Court weighs each of these considerations below in the context of the *Churchill* factors and finds they weigh in favor of approval.  *See infra* sections III.B.1–3.  Next, the Court assesses the distribution method to ensure it "permits the equitable distribution of limited settlement proceeds to eligible class members."  *See McHorney v. GameStop Corp.*, 2010 WL 11549399, at *4 (C.D. Cal. June 17, 2010).  The Settlement Agreement provides for an equal fixed award of $3,200 for each of the thirty-five Class Members, which the Court considers to be an equitable distribution.  *See* Mot. at 2 n.2.  The Court also must scrutinize the proposed attorney's fees.  The Court discusses signs of collusion and the reasonableness of the proposed attorney's fees below and concludes the proposed attorney's fees are reasonable.  *See infra* sections III.C, IV.A.  Finally, the Court must evaluate any agreement required to be identified under Rule 23(e)(3).  The parties do not

indicate there are any separate agreements between the parties, so this does not factor into the analysis.

As for the amount of the settlement fund, Plaintiff asserts that the individual Class Member award of $3,200 amounts to 80 percent of the $4,000 statutory damages available under the Unruh Act for each discriminatory act. *See* Cal. Civil Code § 52(a). The Settlement Agreement also includes corrective action that provides Class Members an opportunity to apply for consumer credit products and services with Defendant. This outcome, which grants Class Members a substantial portion of the potential statutory recovery and eliminates the discriminatory policy alleged by Plaintiff, supports a finding of adequate relief.

In sum, considering the Rule 23(e)(2)(C) factors and the settlement's monetary award and corrective action, the Court finds the relief to be adequate.

### 4.   Equitable Treatment of Class Members

The final factor under Rule 23(e) is whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes. Here, the Settlement Agreement provides for an equal fixed award of $3,200 for each of the thirty-five Class Members. Mot. at 2 n.2. The Court therefore finds treatment of the class members to be equitable.

### B.   Ninth Circuit Churchill Factors

Next, the Court turns to the eight *Churchill* factors. The Court notes that many of the *Churchill* factors overlap with the Rule 23(e) factors analyzed above.

### 1.   Strength of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (citation modified). This factor is generally satisfied when plaintiffs "must overcome barriers to make their case." *See Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550, at *3 (C.D. Cal. Nov. 25, 2019). Plaintiff

refers to the "relatively novel theory" of his claims and Defendant's anticipated opposition to class certification. Mot. at 14. Class Counsel also asserts that it has "conducted extensive research into alienage and immigration-status discrimination, relevant banking and financial regulations, regulations related to immigration status and eligibility for financial products, and federal and state anti-discrimination statutes." Lozada Decl. ¶ 13. Accordingly, the Court finds that this factor weighs in favor of approval.

### 2.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor contemplates the risk of further litigation if the parties do not achieve settlement. Plaintiff argues that delay would increase the number of Class Members who would become untraceable, and that settlement is particularly favored where a plaintiff presents "novel legal questions." Mot. at 15; *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Agreeing that settlement would provide sooner and guaranteed recovery to Class Members, as opposed to the risks and delays of continued litigation, the Court finds this factor weighs in favor of approval.

### 3.   Risk of Maintaining Class Action Status Throughout Trial

The Court has preliminarily certified the class for settlement purposes only. *See generally* Order Granting Prelim. Approval. Plaintiff, however, claims that the class faced the risk that class certification would be denied if Defendant argued that individual issues predominate over common questions. Mot. at 16. But given the speculative nature of Plaintiff's arguments here, this factor does not weigh strongly in favor of approval but also does not weigh against approval.

### 4.   Amount Offered in Settlement

The Court evaluated the amount offered in settlement when considering adequacy of relief. *See supra* section III.A.3. The Court considered the settlement fund and the corrective action to be adequate relief, which weighs in favor of approval.

### 5. Extent of Discovery Completed and Stage of Proceedings

This factor evaluates whether Plaintiff "had sufficient information to make an informed decision about the merits of [his] case." *Dawson*, 2019 WL 7842550, at *4 (citing *In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000)). "The more discovery that has been completed, the more likely it is that the parties have a clear view of the strengths and weaknesses of their cases." *Id.* (citation modified). Class Counsel have conducted informal and confirmatory discovery over several months, involving negotiations and exchanges of loan application materials and data, relevant policies and procedures, underwriting materials, and records about Defendant's membership base to assess the merits of Plaintiff's discrimination claim. Mot. at 19; Fees Mot. at 3; Lozada Decl. ¶ 15. The parties also exchanged multiple offers and counteroffers before reaching a settlement. Fees Mot. at 3; Lozada Decl. ¶ 16. Considering these facts, the Court finds that Plaintiffs had sufficient information to make an informed decision, and this factor weighs in favor of approval.

### 6. Experience and View of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel asserts they are "versed in complex class actions" and "familiar and experienced in the areas of discrimination based on alienage and/or immigration status." Fees Mot. at 14. Class Counsel represents that based on their experience, they concluded that the settlement is a favorable result that is in the best interest of the Class Members. Mot. at 20. The Court accordingly credits Class Counsel's determination and finds that this factor weighs in favor of approval.

### 7. Presence of a Government Participant

Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

### 8. Reaction of the Class Members to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Molski v.*

*Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). Here, the Administrator did not receive any returned notices, requests for exclusions, or notices of objection from the Class Members by the deadline of October 8, 2025. Islas Decl. ¶ 10–12. This factor therefore weighs in favor of approval.

### C. Collusion Factors

Finally, the Court considers whether the Settlement Agreement presents "subtle warning signs" that it may be a collusive byproduct, namely whether there is (1) a disproportionate award of settlement funds to class counsel; (2) a "clear sailing" arrangement, where the defendant agrees not to challenge a request for an agreed-upon attorney's fee; or (3) a "reversion" or "kicker" provision that returns unawarded fees to the defendant, rather than the class. *See In re Bluetooth*, 654 F.3d at 947; *see also Briseño v. Henderson*, 998 F.3d 1014, 1022–25 (9th Cir. 2021) (holding that "courts must apply *Bluetooth*'s heightened scrutiny" to both pre-and post-class certification settlements). "The presence of these three signs is not a death knell," but they "require the district court to examine them, develop the record to support its final approval decision, and thereby assure itself that the fees awarded in the agreement were not unreasonably high." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021).

#### 1. Award to Class Counsel

As discussed below regarding approval of attorney's fees, the Court finds that the requested award to class counsel of $40,000, which is about 25 percent of the gross settlement amount, is reasonable and not excessive. *See infra* section IV.A. The Court also considers that Class Counsel is a non-profit public-interest law firm. Lozada Decl. ¶ 1. This factor does not suggest collusion.

#### 2. Clear-Sailing Provision

Plaintiff acknowledges the Settlement Agreement includes a "'clear sailing' for attorneys' fees and costs." Fees Mot. at 9. Defendant agreed not to oppose an application for attorneys' fees and costs of up to $40,000 but reserved the right to oppose an application for fees more than that amount. Settlement Agreement § 11(d)(i). Defendant also agreed not to challenge an application for a service award of up to $5,000 but reserved the right to oppose an application for an award more than that amount. *Id.* § 11(d)(ii).

"Although clear sailing provisions are not prohibited, they by [their] nature deprive the court of the advantages of the adversary process in resolving fee determinations and are therefore disfavored." *In re Bluetooth*, 654 F.3d at 949 (citation modified). Therefore, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* at 948 (citation omitted).

Here, as discussed below, the Court finds that the requested attorney's fee of $40,000 is reasonable because it is about 25 percent of the gross settlement amount and is lower than the lodestar amount, and that the requested service award of $5,000 is reasonable given Plaintiff's risks taken and efforts expended as the class representative. *See infra* sections IV.A, IV.C. Class Counsel also represents that it negotiated fees and costs separately and after negotiating relief for the Class. Fees Mot. at 18. The Court notes that given the absence of other "red flags" such as a reverter provision, this factor alone does not establish collusion. *Cf. McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610–11 (9th Cir. 2021) (requiring further scrutiny of a clear-sailing provision where the agreement also contained a reverter provision).

### 3. <u>Reversion or Kicker</u>

The Settlement Agreement provides that "in no event shall any portion of the Settlement Fund revert to Defendant." Settlement Agreement § 11(e). Any unclaimed settlement funds will be distributed to *cy pres* recipients approved by the Court. *Id.* § 1(v). This factor does not suggest collusion.

### D. **Conclusion on Class Action Settlement**

In sum, the four Rule 23(e) factors weigh in favor of approval; the eight *Churchill* factors weigh in favor of approval or are neutral; and only one of the three collusion factors possibly suggests collusion, which does not overall support a finding of collusion under the facts presented here. Balancing these factors, the Court GRANTS Plaintiff's motion for final approval of the Settlement Agreement, as amended by the Addendum.

### IV. ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

Plaintiff requests (1) an award of $40,000 in attorneys' fees and costs; (2) up to $3,300 for settlement administration expenses; and (3) a service award of $5,000 for Plaintiff as a named plaintiff and class representative.

#### A. Attorney's Fees and Costs

In the Ninth Circuit, courts may apply two methods of assigning attorney's fees in common fund cases: the percentage-of-the-fund method and the lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts commonly apply the percentage method to evaluate attorney's fees request and then use the lodestar method to cross-check the percentage fee. *See id.* at 1050. Attorneys may also recover "reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

Under the percentage method, courts may award class counsel a percentage of the common fund recovered for the class. *Vizcaino*, 290 F.3d at 1047. In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25 percent of the recovery obtained. *Id.* Here, Class Counsel requests attorney's fees and costs of $40,000, which is approximately 25 percent of the "constructive common fund" or gross settlement amount of $160,300. Fees Mot. at 9. This requested amount includes reimbursement for $431.14 in filing and mailing fees. *Id*. at 23; Lozada Decl. ¶ 48, Dkt. No. 28-1.

Courts may also apply the lodestar method as a cross-check of the percentage method, as the lodestar "measures the lawyers' investment of time in the litigation" and "may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050. The lodestar method calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *Id.* Class Counsel represents it has spent approximately 98.4 hours litigating this case, with attorney Thomas A. Saenz billing 15 hours at a rate of $1,000 per hour and attorney Luis L. Lozada billing 83.4 hours at a rate of $550 per hour, corresponding to a lodestar of $60,870. Fees Mot. at 19; Lozada Decl. ¶ 29.

The lodestar cross-check requires the Court to determine whether the hourly rates sought by counsel are reasonable. "The district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Class Counsel represents they are "experienced, highly regarded members of the voting rights, employment, education, immigrant rights, and civil rights bars" and have "extensive expertise in the areas of class actions and complex litigation involving discrimination and civil and constitutional rights." Lozada Decl. ¶ 7. Class Counsel asserts that their rates are comparable to those of other civil rights litigators in the Los Angeles area. *Id.* ¶ 47; Fees Mot. at 21. Having reviewed Class Counsel's record of experience, the Court finds the hourly rates to be reasonable. *See* Lozada Decl. ¶¶ 5–12; *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (holding that declarations by attorneys regarding the prevailing market rate in the community can suffice to establish a reasonable hourly rate). The Court also recognizes that the requested fees of $40,000, which includes reimbursement for litigation costs, is lower than the calculated lodestar of $60,870.

The Court finds that the requested fees are presumptively reasonable under the Ninth Circuit's 25-percent benchmark and do not exceed a lodestar cross-check. The Court therefore GRANTS the request for $40,000 in attorney's fees and costs.

### B. Administration Costs

Class Counsel requests $3,300 in settlement administration costs to be paid to the Administrator. Fees Mot. at 26. Class Counsel attributes the costs to Administrator's past and anticipated efforts in administrating the settlement, "including sending notices to 35 Class Members identified, administering the settlement website, handling communications with interested Class Members, and administering payments from the Settlement Fund." Lozada Decl. ¶ 52. An invoice from the Administrator documents the costs incurred or expected to be incurred from administering the settlement of this action. *See* Islas Decl. Ex. C. Having reviewed the invoice, the Court finds this cost to be reasonable and adequately documented and GRANTS the request for $3,300 in administration costs.

### C. Service Award

Plaintiff requests a service award of $5,000. Fees Mot. at 24. Service awards are discretionary and "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). District courts must individually evaluate service awards to ensure they are reasonable, using factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2001) (citation modified). The proposed service award is also considered in terms of "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (citation modified). Courts within the Ninth Circuit have approved service awards commonly ranging from $2,000 to $10,000, with $5,000 being presumptively reasonable. *See Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1008 (N.D. Cal. 2025).

Plaintiff requests a service award in recognition of the risks Plaintiff took in prosecuting this action and Plaintiff's efforts in representing the interests of the class. Fees Mot. at 24. Plaintiff asserts that he assumed high risk in attaching his name to the action given his non-permanent immigration status and that he contributed to the litigation by communicating with Class Counsel and providing documents and sensitive information about his immigration status. *Id.* at 4, 25–26. Considering these factors, Court finds a service award of $5,000 to be reasonable and GRANTS the request for a $5,000 service award.

### V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff's motion for final approval of the class action settlement is GRANTED. Defendant shall pay a gross settlement amount of $160,300, to be distributed under the terms of the Settlement Agreement and consistent with this Order.

2. Plaintiff's motion for attorney's fees and costs is GRANTED. The Court awards Class Counsel $40,000 in attorney's fees and litigation expenses. The Court also approves $3,300 in administrative costs to be paid to the Administrator.
3. Plaintiff's motion for a service award is GRANTED. The Court awards $5,000 to Plaintiff.

**IT IS SO ORDERED.**